IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

WDH LLC,

                Plaintiff,                             OPINION AND ORDER

    v.

                                                 10-cv-741-wmc

ROBERT SOBCZAK-SLOMCZEWSKI,

                Defendant.

---

In this action, plaintiff WDH LLC alleges that now *pro se* defendant Robert Sobczak-Slomczewski (1) is liable for breach of his indemnity agreement and guaranty; and (2) converted, diverted and intentionally took funds without the legally-required consent of WDH and court-appointed receiver.  Before the court is plaintiff's motion for summary judgment on all of its claims.  Because no genuine issues of material fact are in dispute with respect to WDH's claims, the court will grant its motion for summary judgment.

I.       **PRELIMINARY MATTERS**

    **A.  Diversity Jurisdiction**

Having removed this lawsuit to federal court, on January 5, 2012, the court issued an order requiring Sobczak-Slomczewski to set forth the names and citizenship of each member of WDH in order to show that the parties in this case are completely diverse. Even though Sobczak-Slomczewski has the burden as the removing party to establish diversity jurisdiction, he never responded to the court's show cause order.[1]  However, WDH submitted the information necessary to make this showing, arguing that the

---

[1] As WDH points out, Sobczak-Slomczewski has exhibited a pattern of unresponsiveness throughout discovery and summary judgment in this case.

principles of judicial economy and efficiency favor this court exercising its jurisdiction over this lawsuit.

As to the latter proposition, the court whole-heartedly agrees. The defendant having gone through two law firms, having nearly defaulted and, at one point, having been unreachable, this dispute has been pending before this court for well over two years and is in its final stages. WDH has spent considerable time and resources attempting to secure a judgment against Sobczak-Slomczewski. Given Sobczak-Slomczewski's propensity for delay, the court agrees that WDH would suffer substantial harm through no fault of its own if the court were to remand the case back to state court because the defendant improvidently removed it.

Of course, there is still the question of diversity jurisdiction because WDH is a limited liability corporation. For the purposes of diversity jurisdiction, "the citizenship of an LLC is the citizenship of its members." *Camico Mutual Insurance Co. v. Citizens Bank,* 474 F.3d 989, 992 (7th Cir. 2007). "[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Meyerson v. Harrah's E. Chicago Casino,* 299 F.3d 616, 617 (7th Cir. 2002).

WDH is a limited liability company organized under the laws of Delaware. Its sole member is U.S. National Bank Association, acting solely as the trustee for the registered holders of the Maiden Lane Commercial Mortgage Backed Securities Trust 2008-1 ("Trust"). Citizenship of a trust is determined by the citizenship of the trustee, as long as the trustee possesses certain customary powers to hold, manage and dispose of assets for the benefit of others. *Navarro Savings Association v. Lee,* 446 U.S. 458, 464 (1980). The Trust owns billions of dollars of commercial loans, and according to the Trust

2

document, U.S. Bank National Association has a variety of rights and duties as the trustee, including examining certificates, reports, documents and other instruments; identifying and reporting Events of Default; addressing Events of Default under the Trust document; and initiating and prosecuting judicial administrative and other proceedings.

Because the bank association has the power to hold, manage and dispose of the Trust's assets, its citizenship is relevant in the diversity jurisdiction analysis.  A national banking association is a citizen of the state in which its main office, as set forth in its articles of association, is located.  *Wachovia Bank, NA. V. Schmidt,* 546 U.S. 303, 307 (2006).  U.S. National Bank Association has its main office in Cincinnati, Ohio.  Because defendant Sobczak-Slomczewski is a resident of the State of Illinois, there is, therefore, complete diversity between the parties.  Having previously found $75,000 in controversy (dkt. #53), this court has jurisdiction over this case.


### B.  Proposed Findings of Fact

In response to WDH's motion for summary judgment, Sobczak-Slomczewski filed a one-page brief in which he states that the "grounds for this response are set forth in the accompanying Affidavit of Robert Sobczak-Slomczewski" and the "no[ne] existen[ce] of the entity filing the Foreclosure Case and fact of altering of the documents including but not limited to the Note, Indemnity Agreement, Security Instrument, Mortgage and Assignment of Leases and Rents connected with the loan from Bear Stearn Commercial Mortgage, Inc."  (Def.'s Resp. Br. (dkt. #45).)  Submitting his own affidavit to support facts that he deemed relevant to opposing summary judgment, Sobczak-Slomczewski did not respond to WDH's proposed findings of fact.  (Def.'s Aff. (dkt. #46).)  Although

3

Sobczak-Slomczewski failed to "state [his] version of the fact[s] and refer to evidence that supports that version" as required in section II of the court's Procedure to be Followed on Summary Judgment, the court will consider his affidavit as a *pro se* litigant in determining whether a genuine issue of material fact exists with respect to the facts proposed by WDH.  (Prelim. Pretrial Conf. Order (dkt. #21) p.12.)[2]

## II.   SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when there are no genuine issues of material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits, and the moving party is entitled to judgment as a matter of law.  The court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party, even if the opposing party fails to present relevant evidence in response to the motion.  *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

Even so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'"  *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)

---

[2] WDH offered additional facts in its reply brief for the court's consideration, but because Sobczak-Slomczewski has not had the opportunity to respond to those proposed facts, the court will not consider them.

(quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)).  If just barely, Sobczak-Slomczewski has submitted sufficient evidence to place material facts in dispute regarding his personal liability when giving him the benefit of all reasonable inferences from undisputed facts as the nonmoving party.  *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007).


### A.  Statement of Facts[3]

#### 1.  Sale of Hilton Garden Inn

On November 28, 2007, Dells Hospitality, Inc. doing business as Hilton Garden Inn Wisconsin Dells ("Dells Hospitality"), entered into an indemnity agreement with Bear Stearns Commercial Mortgage, Inc.  The indemnity agreement relates to a promissory note (also dated November 28, 2007) in the original principal amount of $12,600,000.00, which funded the acquisition of the Hilton Garden Inn Hotel in Lake Delton, Wisconsin, and contains both indemnity and guaranty provisions.

Under the indemnification provisions, Sobczak-Slomczewski promised to protect, defend, indemnify, release and hold WDH harmless from and against any and all losses arising out of several potential scenarios, including the following:

> (iii) the removal or disposal of any portion of the Property (as defined in the Security Instrument) after default under the Note, the Security Instrument or Other Security Documents;

> (iv) the misapplication or conversion by [Dells] of … (C) any Rents (as defined in the Security Instrument) following default under the Security Instrument, the Note or the Other Security Documents;

---

[3] Except as noted, the following facts are deemed undisputed and material for purposes of summary judgment.

…

(vi)   the failure of [Dells] to obtain Lender's prior written consent to any assignment, transfer, or conveyance of the Property or an interest therein as required by the Security Instrument;

…

(viii) [Dells'] filing or consent to the filing of any petition, either voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of creditors.  As used herein, the term "Lossess" includes any and all claims, suits, liabilities, actions, proceedings, obligations, debts, damages, losses, costs, expenses, diminutions in value, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement, punitive damages, foreseeable and unforeseeable consequential damages, of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense).

(Pltf Proposed Findings of Fact (dkt. #32).)

The personal guaranty within the Indemnity Agreement states in part that

Sobczak-Slomczewski

absolutely and unconditionally guarantees to Lender the prompt and full payment of the Debt (as defined in the Security Instrument) in the event that [Dells] files or consents to the filing against [Dells] of a petition, voluntary or involuntary, under the U.S. Bankruptcy Code or any other federal or state bankruptcy or insolvency law, or any partner, member or equivalent person of [Dells], or any person acting in concert with [Dells] or any of the foregoing persons, files or joins in the filing against [Dells] of any involuntary petition under the U.S. Bankruptcy Code or any other federal or state bankruptcy code or insolvency law.

(*Id.*)

To secure this note, Dells Hospitality also executed a mortgage and security agreement creating a mortgage lien on the hotel.  Additionally, Dells Hospitality executed an assignment of leases and rents and certain other documents in favor of Bear.[4]  Bear transferred those Loan Documents, the loan and the indemnity agreement to Maiden

---

[4] The assignment of leases and rents, note, indemnity agreement and security instrument will be referred to collectively as the "Loan Documents."

Lane Commercial Mortgage-Backed Securities Trust 2008-1 on or about June 26, 2008, and Maiden Lane subsequently reassigned the Loan Documents to WDH pursuant to an Omnibus Assignment dated October 1, 2010.

Sobczak-Slomczewski was the president of Dells Hospitality until August 6, 2010, and acknowledges signing on behalf of that company *the signature pages* for each of the Loan Documents in his office on November 27, 2007. Where the factual dispute begins is whether Sobczak-Slomczewski ever saw any of the *other pages* of the Loan Documents, which are dated November 28 and marked November 29, 2007, in the lower left-hand corner of each page. Sobczak-Slomczewski acknowledges attending the closing with his attorney, Michael Fiandaca, on November 28, 2007, in Madison, Wisconsin. While denying that certain others were present at the closing, Sobczak-Slomczewski does not dispute that the final closing documents were then available for his review, nor that his company accepted loan proceeds in the amount of $12,600,000, as a result of the closing.[5] Sobczak-Slomczewski does aver that it was his understanding that he would *not* be providing a personal guaranty as a condition of providing the loan.

### 2. Loan Default and Appointment of Receiver

Dells Hospitality defaulted under the terms of the Loan Documents in January of 2009. WDH's predecessor-in-interest, Maiden Lane, filed an action on August 5, 2009, in Sauk County Circuit Court seeking to foreclose on the Dells' interest in the real estate

---

[5] Sobczak-Slomczewski also disputes that Maiden Lane is a non-existent entity, but merely cites to the fact that he was unable to find it on the website for the Federal Reserve Bank of New York. This does not, however, constitute sufficient evidence to support the fact that Meridian lane is a "non-entity."

comprising the Hilton Garden Inn.   Two days later, that court appointed a receiver, resulting in Dells Hospitality being denied further access to the business's revenues. Three days later, on August 10, Sobczak-Slomczewski was removed as a signatory on Dells' bank accounts at M&I Bank.

While Dells Hospitality was in default and without WDH's consent, Sobczak-Slomczewski caused Dells Hospitality to misapply, convert and/or embezzle money by diverting revenues from the hotel's operating account to an off-site account controlled by him.   He later transferred these funds into another company owned and controlled by Sobczak-Slomczewski -- Grafin, Inc.   These included funds wired by the hotel's independent management company in the amount of $107,257.93, roughly the same amount as the monthly loan payment owed by Dells Hospitality to Wells Fargo.   Instead, this money was deposited into a separate JP Morgan Chase bank account, which Sobczak-Slomczewski opened in Dells Hospitality's name and then transferred to Grafin. In total, Sobczak-Slomczewski wrongly misapplied, removed and disposed of over $677,000 in hotel revenue earmarked to pay debt obligations through the Chase account and then diverted those funds to Grafin without WHD's consent.

On the eve of the scheduled sheriff's sale of the business's assets, including the hotel and real estate, Sobczak-Slomczewski caused articles of merger to be filed at the offices of the Wisconsin Department of Financial Institutions and the Illinois Secretary of State, purporting to merge Dells Hospitality into "Dell5" and transfer all the assets and liabilities of Dells Hospitality.   Needless to say, this was done without WHD's consent as required under the Loan Documents.  On August 10, 2010, Dell5 then filed a petition for bankruptcy in the United States Bankruptcy Court for the Northern District

of Illinois, temporarily thwarting the sheriff's sale.  Two weeks later, the bankruptcy court granted relief from the automatic stay and the sheriff's sale proceeded, resulting in a sale of Dells Hospitality's assets for $9,090,000.

### B.  Opinion

#### 1.  Breach of Indemnification Agreement's Guaranty Provision

As WDH points out, there is a general principle under New York law that an individual who signs a written agreement is bound by its terms.[6]  *See, e.g., Florence v. Merchants Cent. Alarm Co.*, 51 N.Y.2d 793, 412 N.E.2d 1317, 433 N.Y.S.2d 91 (1980); *Pimpinello v. Swift & Co., Inc.*, 253 N.Y. 159, 170 N.E. 530 (1930); *Columbus Trust Co. v. Campolo*, 110 A.D.2d 616, 487 N.Y.S.2d 105 (2d Dep't), *aff'd*, 66 N.Y.2d 701, 496 N.Y.S.2d 425, 487 N.E.2d 282 (1985).  WDH also correctly points out that merely failing to read a contract that one has signed is not a permissible excuse or defense to enforcement of the contract.

In what New York courts often refer to as the seminal case of *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162-63, 170 N.E. 530, 531 (N.Y. 1930), the New York Court of Appeals stated that:

> Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby.  That his mind never gave assent to the terms expressed is not material. Wigmore on Evidence, § 2415. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.

---

[6] The indemnity agreement produced by WDH states that it shall be governed by and enforced under New York state law.  Because Sobczak-Slomczewski does not dispute this assertion or argue that any other state law should apply, the court will apply New York state law to WDH's contract claims.

* * *

> However, there are instances where 'an unexpressed intent can be allowed to overthrow the outward act.' Wigmore on Evidence, § 2405. If the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party, or even by a stranger, unless the signer be negligent, the writing is void.

Although Sobczak-Slomczewski is a sophisticated party capable of reading and understanding commercial documents, he claims that he never even saw the Loan Documents at issue.  He further contends that he was mislead, having never been presented with the Loan Documents that WDH now seeks to enforce against him. Indeed, reading Sobczak-Slomczewski's affidavit in its most favorable light, he is averring that after signing the signature pages of one set of Loan Documents, WDH (or someone else) must have replaced all but the signature pages with a new set of Loan Documents that he never saw.

As a matter of contract law, Sobczak-Slomczewski's assertion -- that his failure to take the opportunity to review any of the loan signature pages somehow excuses any personal liability he may have as a guarantor of a 12.6 million dollar commercial loan -- is meritless.  Relying on *Pimpinello*, New York courts have held that where there is evidence of fraud against one party, and where the other party was not negligent, the party who was the victim of the fraud will not be held to the written agreement.  *See Ortiz v. Gomez*, 816 N.Y.S.2d 698 at *5 (Table) (N.Y. Sup. 2006); *Continental Airlines, Inc. v. Lelakis*, 943 F. Supp. 300, 305 (S.D.N.Y. 1996); *Columbus Trust Co. v. Campolo,* 487 N.Y.S.2d 105, 107 (N.Y. App. Div. 1985); *Florence v. Merchants Cent. Alarm Co.,* 433 N.Y.S.2d 91, 92 (N.Y. 1980).  Sobczak-Slomczewski has failed to offer any proof of a fraud against him or to overcome the overwhelming proof of his own negligence.

10

### a.  Lack of Evidence of Fraud

While claiming to have been defrauded by a switch of documents, Sobczak-Slomczewski has *no* proof.  Just the opposite:  he admits to having *no* idea what the Loan Documents actually said one way or the other.  This does not mean that someone who chose to sign a document in blank is legally bound by *anything* subsequently added to the writing -- as Sobczak-Slomczewski claims occurred here -- just that he or she would have to provide *some* evidence this occurred.  Here, Sobczak-Slomczewski should have been able to offer any number of witnesses and documents to prove that the closing loan documents now relied upon by WDH are fraudulent, including testimony from his own lawyers to the transaction.  If anything, the fraud here would have to have been massive, involving now disinterested sellers, the original lenders at Bear Sterns, likely the closing agent and/or title insurance representative, *and* all of the other lawyers to various parties in the transaction, not to mention copies of the final closing documents that most, if not all, of the parties would almost certainly have retained.  The fact that Sobczak-Slomczewski can offer no one and no document to corroborate his own pure speculation that the contracts were altered post-signing dooms any chance he has of proving fraud.

### b.  Overwhelming Proof of Negligence

Sobczak-Slomczewski's inability to establish his own lack of negligence is even more stark.  By his own admission, Sobczak-Slomczewski had at least three opportunities to review the Loan Documents here:  before signing the signature pages, at the closing itself and after the closing.  No reasonable trier of fact could find Sobczak-Slomczewski's uncorroborated story that -- despite being a sophisticated business person, whose

company was purchasing a $12.6 million hotel for his company -- he never looked at the Loan Documents until sued to make good on his company's debts more than a year after the closing.  But even if accepted as true, his actions constitute negligence *per se*.  Indeed, to allow a plaintiff to avoid enforcement of his signed contract based on nothing but his deliberate blindness to its terms and sheer speculation that he was somehow defrauded would allow the narrow exception recognized by the New York Court of Appeals in *Pimpinello* to swallow the general principle under New York law that a person is bound to honor the terms of his signed contract.

### 2.  Breach of Indemnification Agreement's Indemnity Provisions

Given Sobczak-Slomczewski's complete failure to dispute his blatant conversion of the loan and revenues of the Wisconsin Dells hotel following its default under the Loan Documents, Sobczak-Slomczewski similarly concedes his breach of the indemnity provisions in the Indemnity Agreement in the amount of $677,257.93.

Less clear is a proper assessment of damages.  First, as WDH notes, these losses are subsumed within the overall damages WDH suffered as a result of Sobczak-Slomczewski's breach of the guaranty provision in the Indemnity Agreement.  Second, it is unclear what offset, if any, is due against WDH's total losses for the indemnity and guaranty provisions of the Agreement to account for the proceeds of the sheriff's sale held in the state court foreclosure action.  Third, WDH also notes that it is entitled under these provisions to "interest, costs, penalties and attorney's fees as outlined in the Loan Documents."

Since the court is unable to discern what the final damage award should be after accounting for all of these factors, it will give both sides an opportunity to address the question of the appropriate final judgment that should be entered as a result of Sobczak-Slomczewski's contractual breaches.

### 3.  Conversion, Misapplication and Embezzlement

Finally, WDH gives relatively short shift to its remaining conversion and theft claims, though Sobczak-Slomczewski gives even less, apparently because he is under the misimpression that he could not be held liable for conversion or theft if he was not bound by the terms of the Loan Documents, particularly the guaranty and indemnity provisions of the Indemnity Agreement.  Since these claims sound not in contract but in Wisconsin's common law of tort and civil theft statutes, however, Sobczak-Slomczewski is simply mistaken.  *See* Wis. Stat. §§ 895.466 and 943.20(1).  By essentially conceding facts establishing illegal conversion, WDH is, therefore, entitled to summary judgment on that common law claim as well.

Typically, question of intentionality required for establishment of liability for theft under § 943.20 would require a trial, except that here, too, Sobczak-Slomczewski fails to dispute the material facts, including his own testimony before Bankruptcy Judge Jacqueline P. Cox in opposition to WDH's motion requesting leave from automatic stay in which he admitted intentionally transferring monies earmarked to pay off Dells Hospitality's loan obligations.  No reasonable trier of fact could, therefore, fail to find intentional acts of theft in violation of Wis. Stat. § 943.20(1) by a preponderance of the credible evidence in the amount of at least $677,000.

This sum would also appear to be subsumed within WDH's losses from Sobczak-Slomczewski's breach of his guaranty, although the finding of intentionality may be important for bankruptcy purposes.  Additional damages may also be available under § 985.446(3)(a)-(c) for attorney's fees and treble damages, but WDH does not enumerate those and the court will allow additional submissions by the parties as to the availability of all of these remedies.[7]

WDH is, therefore, entitled to judgment as a matter of law on all of its liability claims, while any award of damages and entry of final judgment must await further submissions by the parties.


ORDER

IT IS ORDERED that defendant WDH LLC's motion for summary judgment (dkt. #30) is GRANTED.  WDH shall have 30 days to submit its proof of damages supported by affidavit, any additional documentation deemed necessary and a proposed final judgment consistent with the above; defendant shall have 30 days to respond in kind; and the court will hold an evidentiary hearing if any material facts remain in dispute as to the appropriate remedy.

Entered this 20th day of March, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[7] Section 859.446(3)(c) appears to require no "additional proof" for tripling of the amount awarded for damages under (a), but  Sobczak-Slomczewski will be allowed to argue otherwise.

14